Minshaul, C. J.
The real question in the case, and the only one we shall consider, aside from one of pleading and evidence, is whether on the admitted facts the plaintiff below, Gaffney, was entitled to recover of the defendant on an implied contract, the value of the services for which he claims compensation. The plaintiff had a contract with the general government by which, for a compensation, he was bound to carry the mails to and from the depot of the Columbus, Hocking Valley & Toledo Railway Company to the postoffice at Lancaster, Ohio, and also to and from the Cincinnati & Muskingum Valley Railway Company at the same place. These two roads at this point form a junction, the roads running on.opposite sides of a common depot, within forty feet of each other. Each of these roads had a contract with the government for carrying mails over its road, by which each was required to transfer the mails over its road, to that of the other when required in the course of transit, as the distance between them was less than eighty rods, the contract with the government imposing that duty on each when the distance between them is no greater. During the entire period for which compensation was claimed this work had been performed by the plaintiff — a period of over six years — part of the time under a contract of the government with one Turner, of which the plaintiff was the assignee, and the residue of the time under a contract with himself, the terms of both contracts being alike. The plaintiff during the entire time supposed that it was his duty under his contract with the gov *113 erament in regard to carrying the mails between tbe depot and the postoffice, to make tbis transfer between tbe two roads, and performed tbe service under tbis impression, until be was informed by an agent of tbe government that it was not bis duty and was ordered to desist from doing so. No demand for compensation was made until be bad received tbis order from tbe government agent, and be at no time supposed that be was entitled to any until tbis time; nor was there any express request on tbe part of tbe company or its agents, for tbe performance óf tbe service, the company having agents of its own at the depot who should have performed tbe service. It also appears that at' tbe time Turner assigned bis contract to tbe plaintiff be informed him that tbis service was a part of bis duty under the contract with tbe government. On this state of facts, it is claimed that a contract should be implied on the part of tbe defendant to pay tbe plaintiff what bis services were reasonably worth in so transferring tbe mails for the defendant at tbe depot. Tbe common pleas rendered a judgment in his favor for $603.58, being for a period of-some six years, and tbe judgment was affirmed on error by tbe circuit court.
There is some confusion in tbe statement of the law applicable to what are frequently called implied contracts, arising from tbe fact that obligations generically different have been classed as such, not because of any real analogy, but because where tbe procedure of tbe common law prevails, by tbe adoption of a fiction in pleading — that of a promise where none in fact exists or can in reason be supposed to exist — the favorite remedy of implied assumpsit could be adopted. This was so in that large class of cases, where suit is brought to recover money paid by mis *114 take or has been obtained by fraud. Here it is said the law implies a promise to repay the money, when it was well understood that the promise was a mere fiction, and in most cases without any foundation whatever in fact. The same practice was adopted where necessaries had been furnished an insane person or a neglected wife or child. In all these cases no true contract exists. They are, by many authors, termed quasi contracts, a term borrowed from the civil law. In all these cases no more is meant than that the law imposes a civil obligation on the defendant to restore money so obtained, or to compensate one who has furnished necessaries to his wife or child, where he has neglected his duty to provide for them, or, by reason of mental infirmity, is unable to obtain them for himself. But contracts that are true contracts are frequently termed implied contracts, as, where from the facts and circumstances, a court or jury may fairly infer, as a matter of fact, that a contract existed between the parties, explanatory of the relation existing between them. Such implied contracts are not generically different from express contracts; the difference exists simply in the mode of proof. Express contracts are proved by showing that the terms were expressly agreed on by the parties, whilst in the other ease the terms are inferred as a Matter of fact from the evidence offered of the circumstances surrounding the parties, making it reasonable that a contract existed between them by tacit understanding. In such cases no fictions are, or can be, indulged. The evidence must satisfy the court and jury, that the- parties understood that each sustained to the other a contractual relation; and that' by reason of this relation the defendant is indebted to the plaintiff for services performed or for goods sold and delivered.
In the leading case of Hertzog v. Hertzog, 29 Pa. *115 St., 465, the distinction is clearly stated by Judge Lowrie. After quoting from Blackstone, and observing that bis language is open to criticism, be says: “There is some looseness of thought in supposing that reason and justice ever dictate any contracts between parties, or impose such upon them. All true contracts grow out of tbe intentions of parties to transactions, and are dictated only by their mutual and accordant wills. When tbe intention is expressed, we call tbe contract an express one. When it is not expressed, it may be inferred, implied, or presumed, from circumstances really existing, and then tbe contract, thus ascertained, is called an implied one.” * * * “it is quite apparent, therefore, that radically different relations are classified under tbe same term, and this often gives rise to indistinctness of tbougbt. And this was not at all necessary; for we have another well-authorized technical term exactly adapted to tbe office of making the true distinction. Tbe latter class are merely constructive contracts, while tbe former are only implied ones. In one case tbe contract is a mere fiction, a form imposed in order to adapt tbe case to a given remedy; in tbe other it is a fact legitimately inferred. In one tbe intention is disregarded; in tbe other, it is ascertained and enforced. In one, tbe duty defines tbe contract; in tbe other, the contract defines tbe duty.” Tbe subject is instructively treated by Prof. Keener in chapter 1 of bis work on Qttasi-Contracts. He expresses the difference between an express contract and a true implied contract as follows: “In tbe one case tbe language of contract is in terms used, and because of tbe expressions used, tbe contract is called an express contract; whereas in the other case tbe contract is established by tbe conduct of tbe parties, viewed in tbe light of surrounding circumstances, and is called a contract implied in fact.”
*116 The language quoted by counsel for defendant in error from Swan’s Treatise, 509, that • "an implied contract is established by proof of circumstances, showing either that in. justice or honesty a contract ought to he implied, or that the parties intended to contract,” is doubtless due to "the looseness of thought” on the subject, to which the learned judge above refers. The language is quite appropriate to quasi, or constructive, contracts, frequently classed with implied proper contracts, but wholly inapplicable to true contracts. Swan evidently followed the language of Blackstone, that has frequently been criticised.
The rule of evidence applicable to the proof of an implied contract is accurately stated in Abbott’s Trial Evidence, 858, as follows: “In general there must be evidence that defendant requested plaintiff to render the service or assented to receiving their benefit under circumstances' negativing any presumption that they would be gratuitous. The evidence usually consists in, first, an express request pertaining to the services, or second, circumstances justifying the inference that plaintiff, in rendering the services expected to be paid, and defendants supposed or had reason to suppose and ought to have supposed that he was expecting pay, and still allowed him to go on in the service without, doing anything to disabuse him of this expectation; or third, proof of benefit received, not on an agreement that it was gratuitous and followed by an express promise to pay.”
It seems then clear that no contract can be inferred from the facts in this case; for it does not appear from anything in the case, that the plaintiff performed the services for which he sues under a contract with the defendant, whereby it was agreed between them that he should be compensated for his *117 services by tb'e defendant in any sum. There could have been no meeting of minds on any of its terms, and without which no contract can exist, whether express or implied. During all this time, some six years, in which he was engaged in doing the work, the plaintiff supposed that it was his duty to do it, under his contract with the government. He did not, therefore, during the time, regard himsélf as performing any services for the defendant, and made no claim against it for compensation, until after he had been informed that it was not his duty to do what he had been voluntarily doing. This fact negatives the existence of any contract express or implied having existed between the parties during the time' the services were being performed. The minds of the parties could not have met on the subject of compensation, when the party doing the work had no idea that he was to be compensated by the defendant at the time the work was done. Under such circumstances the understanding of the party for whom the work was done, becomes immaterial, unless it had been so communicated to the other party as to have induced the performance of the services, which was not the case, if it had any such understanding. But there is nothing in the case to show any such understanding on the part of the companv. It is true that under its contract with the government it appears, that the transfer of mails from its road to the other, was one of its obligations, and the plaintiff in attending to the matter performed a service, that it, through its agents, should have performed. But no request of the company is here shown by implication; since the company had agents of its own at the depot, and the plaintiff in doing what he did, performed services that should have been attended to by the employes of the company. And had *118 any claim been made by the plaintiff for compensation, or had the circumstances indicated that he would make such claim, doubtless the company would have directed its own agents to attend to the business. This shows that there was nothing in the conduct of the plaintiff that indicated a purpose on his part to make a claim for compensation at the time the work was performed, and that the company did not regard itself as receiving services from him for which it was to make compensation. In no view of the case then, can the suit of the plaintiff be maintained against the company on the ground of an implied contract to pay what the services were reasonably worth.
Though not necessary to the disposition of the case, it may be proper to notice the exception of the defendant to the admission of the evidence offered under the averments of the petition; the claim being that the petition purports to be upon an express contract whilst the evidence offered simply tended to support an implied one. We do not think there was error in this regard. The substance of the averments of the petition is, that for a period of over six years, the plaintiff had been employed by the defendant, “at its instance and request” to transfer mails from its trains to the trains of the Cincinnati & Muskingum Valley Railroad Company, at Lancaster, Ohio. There is, as we have shown, no generic difference between an express contract and one implied from circumstances. The plaintiff was not required to state the character of the evidence on which he would rely to support the averment, that the services were rendered under a contract with the defendant. It was therefore competent for him to offer the circumstances under which he did the work, in support of his averment that it *119 was done “at the instance and request” of the defendant. The evidence was competent, but failed in proof.

Judgment reversed; and judgment for defendant.

Burket, Spear, Davis and'SHAUCK, JJ., concur.